UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DONALD M. TAYLOR,

        Plaintiff,                  Case No. 1:16-cv-354

v.                                          Honorable Robert J. Jonker

VIRGINIA C. CAIRNS et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim.

**Factual Allegations**

Plaintiff Donald M. Taylor is a pretrial detainee who is housed in the Kalamazoo County Jail. He sues his court-appointed defense attorney Virginia C. Cairns, Judge Pamela Lightvoet, Kalamazoo Public Safety Officer Scott Brooks, and Prosecuting Attorney Jeffrey S. Getting.

Plaintiff alleges alleges that, on June 24, 2015 at about 12:30 a.m., he was sleeping on his father's couch. He was awakened by his 15-year-old niece having sex with an older man. Plaintiff interrupted the two, threatening to tell his sister about his niece's behavior. The man ran out of the house. A few minutes later, while Plaintiff was urinating in the bathroom, his niece kicked the bathroom door in, causing Plaintiff to urinate on himself. In retaliation for his interference in her relationship, Plaintiff's niece threatened to call the police and tell them that Plaintiff had sexually assaulted her.

Plaintiff left the house in a hurry, stuffing his underwear in his pocket. He hoped to locate the man who had been with his niece. While Plaintiff was walking on Ray Street and buckling his pants, Defendant Brooks approached and spoke with him. Plaintiff decided not to report his niece, so he gave a fabricated story to Brooks. Plaintiff alleges that the incident was recorded on the video camera of the patrol car, but he contends that Defendants Getting and Brooks are denying him exculpatory evidence by failing to give him a personal copy of the video recording. The following day, after Plaintiff's niece made a report to the police, Detective Kristin Cole interviewed Plaintiff. Cole allegedly wrote a false report, indicating that Plaintiff had admitted that he "was high on crack, drunk, and didn't know why [he] did what [he] did." (Compl., ECF No. 1, PageID.5.)

On June 26, 2015, Defendant Cairns was appointed as Plaintiff's attorney. Plaintiff alleges that Cairns has not provided effective assistance of counsel, as she had only met with him a couple of times. He also contends that Cairns improperly continues to represent him, despite his having fired her.

Plaintiff also alleges that on March 12 and 16, 2016, he filed a motion requesting that Defendant Lightvoet recuse herself, because she "was racist, a drunkard, and that, due to [his] skin being black and her white she should recuse herself as judge . . . ." (*Id.*, PageID.6.) Defendant Lightvoet denied his motion. Plaintiff also alleges that Defendant Lightvoet has denied his request to appoint new counsel and is conspiring with the Kalamazoo County Dep't of Public Safety, Prosecutor Getting, and defense attorney Cairns to maliciously prosecute him.

Plaintiff also contends that he is being denied exculpatory evidence in the form of the police videotape. He also contends that Defendants have DNA evidence of male sperm that does not match Plaintiff, but that Defendants are refusing to match the evidence against the CODIS[1] system to locate the real perpetrator.

Plaintiff seeks an injunction removing Defendants Lightvoet, Getting and Cairns from his case, as well as an injunction to provide Plaintiff with copy of the video recording. He also seeks compensatory damages.

---

[1] The acronym "CODIS" is short for "Combined DNA Index System," which is the FBI-maintained program for listing DNA profiles collected by law enforcement agencies.

**Discussion**

I. <u>Immunity</u>

   A. **Defendant Lightvoet**

Plaintiff claims that Judge Lightvoet violated his rights to due process and equal protection by denying Plaintiff's motions to appoint substitute counsel and to recuse herself. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of person consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. There is no doubt that considering and deciding the motions filed in Plaintiff's criminal action are judicial acts and that Judge Lightvoet was acting within her jurisdiction in taking those acitons. Accordingly, Judge Lightvoet is absolutely immune from liability. Because Judge Lightvoet is clearly immune from liability in this case, Plaintiff may not maintain an action for monetary damages against her. 28 U.S.C. § 1915(e)(2)(B)(iii).

Moreover, injunctive relief is also not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

### B. Defendant Getting

Defendant Prosecutor Getting also is entitled to absolute immunity for his actions in prosecuting the criminal action against Plaintiff, declining to recuse himself from the case, and failing to release the video recording of Plaintiff's interaction with Defendant Brooks.

The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a

detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997).

Obviously, actions taken by Plaintiff during the criminal proceedings are part of the prosecutor's role as an advocate. *See Imbler*, 424 U.S. at 430. Moreover, the Sixth Circuit has squarely held that a prosecutor is immune for failing to disclose exculpatory evidence. *Koubriti v. Convertino*, 593 F.3d 459, (6th Cir. 2010). Accordingly, Defendant Getting is entitled to absolute immunity from damages for his actions in prosecuting Plaintiff, refusing to recuse himself, and failing to release the video recording.

Plaintiff suggests, however, that Defendant Getting is currently failing to adequately investigate the identity of the person whose DNA was found on the victim. The Supreme Court has distinguished between a prosecutor's acts taken his role as an investigator in the phase preceding the charging of the accused and his acts taken in his role as an advocate during the judicial phase of a case. *See Buckley*, 509 U.S. at 273-74. The Sixth Circuit has recognized that "[t]he line between conduct that is part of a preliminary investigation and conduct that is intimately associated with the judicial phase of a criminal proceeding is difficult to draw in some cases." *Prince v. Hicks*, 198 F.3d 607, 612 (6th Cir. 1999). Nevertheless, in *Ireland*, the Sixth Circuit concluded that "[i]nvestigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection." 113 F.3d at 1445.

In the instant case, Plaintiff does not complain about Defendant Getting's investigative conduct preceding the charging decision. Instead, he challenges Getting's failure to undertake specific investigatory acts in his preparation for trial with respect to DNA results that were released long after Plaintiff was charged. Such "administrative or investigative acts necessary for a prosecutor to . . . maintain the criminal prosecution" are entitled to absolute immunity. *Prince*, 113 F.3d at 1447. Defendant Getting therefore is entitled to absolute immunity from damages for the alleged failure to investigate.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Cairns

Plaintiff fails to state a claim against Defendant Cairns, his court-appointed attorney, because he cannot show that Cairns acted under color of state law. In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel perform a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the

lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control. *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003). Accordingly, Plaintiff's court-appointed attorney does not act under color of state law, and no claim under § 1983 can be maintained against her.

### B. Defendants Getting & Brooks[2]

Plaintiff asserts that Defendants Getting and Brooks are depriving him of exculpatory evidence in violation of the Due Process Clause by neglecting to provide him with a copy of the video recording of Plaintiff's interaction with Officer Brooks. He also alleges that both Getting and Brooks are maliciously prosecuting him.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused,

---

[2]Although Defendant Getting is entitled to absolute immunity from damages for actions taken in his prosecutorial role, Plaintiff also sues Getting in his official capacity for prospective injunctive relief in the form of an order directing release of the video recording of Plaintiff's interaction with Defendant Brooks.

either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Although Plaintiff sweepingly asserts that the video recording is exculpatory, he fails to make any factual allegation about what the videotape is expected to show, why the video evidence would be exculpatory, or how the video evidence would be material to his guilt or innocence on the charged offense or offenses.[3] Instead, his claim is wholly conclusory. As previously discussed, conclusory allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Given the lack of factual allegations, Plaintiff fails to state a claim against Defendants Getting and Brooks for failure to produce the video recording.

To the extent the Plaintiff alleges that he is being maliciously prosecuted, Plaintiff fails to state a claim, regardless of the form of relief he requests. In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit recognized the existence of a claim of malicious prosecution arising under the Fourth Amendment, which is cognizable in an action under § 1983. *Id.* at 308 (citing *Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007) (assuming without deciding that such a claim

---

[3]Plaintiff is being held on charges of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, and being a fourth-offense felony offender, MICH. COMP. LAWS § 769.12. Under these circumstances, it is difficult to imagine how the video recording of his interaction with Defendant Brooks could be relevant, material, and favorable to the defense with respect to the charges. In any event, Plaintiff most certainly has failed to articulate such relevance, materiality and favorableness.

existed)). The *Sykes* court held that, to succeed on a malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308-09; *see also Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 725, 727 (6th Cir. 2006).

In the instant case, Plaintiff's allegations fail at the second step of the analysis. By his own admission, Plaintiff is being detained awaiting trial. His current detention necessarily indicates that a state court has found probable cause for the prosecution.[4] As a consequence, regardless of whether Plaintiff ultimately is acquitted of the offense, he fails to state a malicious-prosecution claim against any Defendant.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), on grounds of immunity and failure to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

---

[4]Under Michigan law, a magistrate must find probable cause on a complaint supported by affidavit or testimony to either issue a warrant for the arrest of an accused on a complaint or, if the person has been arrested, to endorse the complaint. MICH. COMP. LAWS §§ 764.1a - 764.1c. An accused also is entitled to a prompt preliminary examination at which to contest the existence of probable cause. *See* MICH. COMP. LAWS § 766.4. According to the public records of the Kalamazoo County Circuit Court the Eighth District Court, Plaintiff waived his preliminary examination, thereby conceding the existence of probable cause, on July 8, 2015. *See People v. Taylor*, No. 2015-0883-FC (9th Mich. Cir. Ct. Jul. 8, 2015); *People v. Taylor*, No. 15088FY (8th Mich. Dist. Ct., Jul. 8, 2015).

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:      May 11, 2016                    /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE